IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KALEY T. CRUM                                                                    PLAINTIFF

v.                                    Civil No. 5:25-cv-05113-CDC

QUINTON L. REINHARDT                                                      DEFENDANT

**OPINION AND ORDER**

This is a civil rights action filed pursuant to 42 U.S.C. § 1983.  Currently before the Court are Defendant Quinton L. Reinhardt's Motion for Summary Judgment (ECF No. 22), Brief in Support (ECF No. 23), and Statement of Undisputed Material Facts (ECF No. 24); Plaintiff Kaley T. Crum's Response to Defendant's Statement of Undisputed Material Facts (ECF No. 30) and Brief in Opposition (ECF No. 31); and Defendant's Reply (ECF No. 34).  Also before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 27), Brief in Support (ECF No. 28), and Statement of Undisputed Material Facts (ECF No. 29); and Defendant's Response in Opposition (ECF No. 32), and Response to Plaintiff's Statement of Undisputed Material Facts (ECF No. 33). For the reasons given below, Defendant's Motion is GRANTED, Plaintiff's Motion is DENIED, and Plaintiff's Complaint (ECF No. 2) is DISMISSED WITH PREJUDICE.

**I.  BACKGROUND**

On March 8, 2025, Plaintiff Kaley T. Crum was the driver of a car that rolled over onto its top in a single-vehicle accident in Bentonville, Arkansas, in which nobody was injured.  *See* ECF No. 2, ¶ 4.  Defendant Quinton L. Reinhardt, who is a Bentonville police officer, performed an investigation at the scene of the accident and came to believe that Plaintiff might have been driving while intoxicated.  *See id.* at ¶¶ 2, 4–5.  Plaintiff alleges that he was then taken to the Bentonville police station and required to provide a urine sample despite never having given any voluntary

1

legal consent to do so and despite the absence of any search warrant. *See id.* at ¶¶ 6–10. On May 12, 2025, in Bentonville District Court, Plaintiff was found not guilty of driving while intoxicated. *See id.* at ¶ 11. Plaintiff filed this lawsuit nine days later under 42 U.S.C. § 1983, claiming that the taking of his urine sample violated his right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches. *See id.* at ¶¶ 12–15. Plaintiff seeks compensatory damages from Defendant, who is being sued only in his individual capacity. *See id.* at ¶¶ 2, 17.

Discovery in this matter has concluded, and both parties have moved for summary judgment. Both cross-motions have been fully briefed and are now ripe for decision.

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The same standard applies where, as here, the parties have filed cross-motions for summary judgment. Each motion should be reviewed in its own right, however, with each side "entitled to the benefit of all inferences favorable to them which might reasonably be drawn from the record." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

Section 1983 was enacted to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). To assert a claim under § 1983, a plaintiff must allege two elements: (1) that the action occurred under color of law; and (2) that the action is a deprivation of a right secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). Defendant contends that he is entitled to qualified immunity from Plaintiff's claim. The qualified immunity inquiry consists of two questions: "(1) whether the facts alleged or shown . . . establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of" the time of the relevant conduct "such that a reasonable official would have known that his actions were unlawful." *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). The Court can answer the questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). A § 1983 plaintiff may defeat qualified immunity only if the answer to both questions is yes. *Krout*, 583 F.3d at 564.

The parties agree that Plaintiff's urine sample was not taken pursuant to any search warrant, but that instead, before the urine sample was taken, Plaintiff signed a form consenting to it. *Compare* ECF No. 24, ¶¶ 13–21, *with* ECF No. 30, p. 1. Collecting a urine sample constitutes a

3

search within the meaning of the Fourth Amendment. *Skinner v. Ry. Labor Execs. Ass'n*, 489 U.S. 602, 617–18 (1989). Warrantless searches are reasonable only if they fall within a recognized exception. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013). One of those exceptions is consent. As the Eighth Circuit has observed, "[t]he Fourth Amendment does not prohibit warrantless searches conducted pursuant to the knowing and voluntary consent of the person subject to the search." *United States v. Clay*, 161 F.4th 545, 555–56 (8th Cir. 2025).

Since the parties agree that Plaintiff signed a form consenting to this search, one might think that is simply the end of the matter, then. However, there is a critical nuance here. Specifically, the form that Plaintiff signed informs the reader that persons operating a motor vehicle who are involved in an accident are deemed to have given consent to chemical urine tests, and that if such a person refuses then he will be subjected to "the penalties provided by law, which includes, but is not limited to, the suspension or revocation of your driving privileges." *See* ECF No. 24-11.

Although the form does not cite this statute, Section 5-65-205 of the Arkansas Code provides that if such a person refuses to consent to said chemical test, then his "license, permit, or other evidence of driving privilege shall be seized by the law enforcement officer," and his driving privilege shall be suspended or revoked by the Office of Driver Services for a specified period of time that depends on how many previous violations of this statute he has accrued. *See* Ark. Code Ann. § 5-65-205(a)–(c). Although this statute specifies that refusal to submit to a chemical test under these circumstances is a criminal "violation," *see id.* at § 5-65-205(a)(2), the form which Plaintiff signed does not specify whether the "penalties" it describes of losing one's driving privileges are criminal or merely administrative, *see* ECF No. 24-11. Defendant's body camera recorded the entire discussion between Defendant and Plaintiff regarding the consent form, both before Plaintiff initially consented to a breath test and then again before Plaintiff consented to the

4

subsequent urine test. *See generally* Def. Ex. 3, 36:50–1:09:40. Much like the form itself, Defendant never explicitly stated during this discussion that the penalties described therein were criminal in nature. *See generally id.* In fact, at one point, Defendant attempted to explain the notion of implied consent to Plaintiff by analogy to a contract. *See id.* at 45:07. However, the Court will assume for purposes of these motions that Plaintiff understood these penalties to be criminal in nature. Plaintiff contends that, as a matter of law, his consent to the urine test could not have been voluntary under these circumstances, because it was unlawful for him to withhold his consent.

The United States Supreme Court has held that "motorists cannot be deemed to have consented to a blood test on pain of committing a criminal offense." *Birchfield v. North Dakota*, 579 U.S. 438, 477 (2016). However, in that same case, the Supreme Court also held that "[b]ecause breath tests are significantly less intrusive than blood tests and in most cases amply serve law enforcement interests, . . . a breath test . . . may be administered as a search incident to a lawful arrest for drunk driving" without first obtaining a warrant or the subject's valid consent. *See id.* at 476. Importantly for our purposes here, *Birchfield* did not involve any warrantless urine test. *See id.* at 447 n.1. Plaintiff argues that a urine test is sufficiently intrusive as to be like the blood draw discussed in *Birchfield*, such that it may not be warrantlessly administered as a search incident to arrest for drunk driving without the subject's valid consent.

The Court will assume for the sake of argument on these motions that a urine test is sufficiently intrusive that it does not fall within the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. The question then remains, for purposes of qualified immunity analysis, whether this principle was clearly established at the time of these events such that a reasonable official in Defendant's position would have known that it was unlawful for him to take Plaintiff's urine sample at that time. The Court finds that it was not.

As for *Birchfield* itself, the Court finds that it does not clearly establish this principle. This Court certainly does not mean to minimize the intrusiveness of taking a urine sample; but the fact remains that a blood draw, unlike the taking of a urine sample, involves physical penetration of the subject's body with a sharp object. A reasonable officer in Defendant's position could therefore conclude that *Birchfield* is distinguishable and that taking a urine sample does not rise to the level of intrusiveness proscribed by that case. The Court has been unable to find any cases from the Eighth Circuit or the United States Supreme Court holding that a urine test is sufficiently intrusive to fall outside the search-incident-to-arrest exception. In fact, this Court has been unable to find any cases addressing that question from *any* federal circuit court of appeals. On the other hand, there are three *state-court* cases within the geographic boundaries of the Eighth Circuit that have so held. *See State v. Thompson*, 886 N.W.2d 224, 233 (Minn. 2016); *State v. Helm*, 901 N.W.2d 57, 63 (N.D. 2017); *State v. Hi Ta Lar*, 908 N.W.2d 181, 186–87 (S.D. 2018). But however persuasive those authorities' reasoning may be on the underlying legal question, in the absence of any controlling federal decisions on the matter, this Court does not believe a smattering of state-court cases represents so robust a consensus as to have "placed the constitutional question beyond debate," which is what must be shown in order to meet the "clearly established" prong of qualified-immunity analysis. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 989 (8th Cir. 2015).

Certainly, the Supreme Court has held that collecting a urine sample is sufficiently intrusive to constitute a "search" for purposes of the Fourth Amendment. *See Skinner*, 489 U.S. at 616–18. But it has also held this to be true for collecting breath samples. *See id.* The question here is not whether taking a urine sample is sufficiently intrusive to be a "search" under the Fourth Amendment, but rather whether it is *so* intrusive as to fall outside the search-incident-to-arrest *exception* to the Fourth Amendment's warrant requirement. This, neither the Supreme Court nor

6

any federal circuit appears to have addressed.  Accordingly, the Court finds that this principle was not clearly established at the time of the events giving rise to this lawsuit.  And this means that Defendant is entitled to qualified immunity.

### IV.  CONCLUSION

IT IS THEREFORE ORDERED that Defendant Quinton L. Reinhardt's Motion for Summary Judgment (ECF No. 22) is GRANTED, Plaintiff Kaley T. Crum's Motion for Summary Judgment (ECF No. 27) is DENIED, and Plaintiff's Complaint (ECF No. 2) is DISMISSED WITH PREJUDICE.  Judgment will be entered contemporaneously with this Order.

IT IS SO ORDERED this 18th day of June 2026.

/s/ *Christy Comstock*

HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

7